UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and | ) |
| | ) |
| MONSANTO TECHNOLOGY, LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. |
| | ) |
| OMEGA FARM SUPPLY, INC., d/b/a | ) |
| OMEGA FARM SUPPLY & GIN | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs, Monsanto Company and Monsanto Technology, LLC ("Monsanto"), complain of Defendant Omega Farm Supply, Inc., d/b/a Omega Farm Supply & Gin Company ("Omega" or "Defendant").  Omega breached its contract with Monsanto and knowingly and willfully committed and induced patent infringement by transferring and selling saved Roundup Ready® Flex, Bollgard II®, and/or Roundup Ready® Flex with Bollgard II® cotton seed for planting without authorization from Monsanto.  Suit is brought to enforce the agreements and ensure patented seed is not misused to the detriment of Monsanto and farmers who honor their contracts and respect patents.  The case is filed in St. Louis, Missouri because Omega agreed, in a written contract, that if any dispute occurred, St. Louis would be an appropriate place for any dispute resolution to occur.

**THE PLAINTIFFS**

**Monsanto Company**

1.     Monsanto Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri.

5943652

2. Monsanto Company is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and agricultural products.  After the investment of substantial time, expense, and expertise, Monsanto Company developed biotechnology that results in plants having tolerance to glyphosate-based herbicides (such as Roundup WeatherMAX® and Touchdown®) as well as separate biotechnology, resulting in plants producing Bacillus thuringiensis (B*t*) insecticidal proteins that control certain insect species (including budworms, bollworms, and armyworms) that are cotton plant pests.

3. Cotton seed containing these biotechnologies is marketed by Monsanto Company under multiple trade names, including Roundup Ready® and Roundup Ready® Flex cotton, Bollgard® and Bollgard II® cotton, and Roundup Ready® Flex with Bollgard II® cotton.

4. Monsanto's Roundup Ready® Flex biotechnology is protected by multiple United States patents, including United States Patent Number 6,949,696 ("the '696 patent"), which is attached hereto as Exhibit "A".  The '696 patent was issued on September 27, 2005.

5. Monsanto's Bollgard II® biotechnology is protected by multiple United States patents, including United States Patent Number 7,064,249 ("the '249 patent"), which is attached hereto as Exhibit "B".  The '249 patent was issued on June 20, 2006.

6. Monsanto Company is exclusive licensee of the '696 and '249 patents from Monsanto Technology, LLC.

**Monsanto Technology LLC**

7. Monsanto Technology, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri.

8. Monsanto Technology, LLC is the owner of the '696 and '249 patents.

## THE DEFENDANT

9. Defendant Omega is a corporation in the State of Georgia with its principal place of business at 1514 Georgia Avenue, Omega, GA 31775.

10. Defendant is engaged in distributing farm input supplies, including seed, and the ginning, warehousing, and marketing of cotton. Defendant owns Omega Gin and operates its farm supply and ginning business as one legal entity.

## JURISDICTION AND VENUE

11. This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et. seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, because one or more of Monsanto's claims arise under the laws of the United States, as well as 28 U.S.C. §1338, granting district courts original jurisdiction over any civil action regarding patents. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Monsanto's non-federal question claims because they form part of the same case or controversy.

12. This Court has personal jurisdiction over Defendant because Omega agreed to personal jurisdiction in the Eastern District of Missouri and has designated this judicial district as the exclusive forum and venue for all disputes arising under the Monsanto Brand Seed Dealer Agreement signed by the Defendant.

## GENERAL BACKGROUND TO THE LAWSUIT

13. Omega has an agreement with Monsanto for distributing its products. As a result, Omega was fully aware of Monsanto's patents and of its obligation to not allow saved seed to be collected, and to report any such activity to Monsanto. Not only did Omega not report unlawful saved seed activity, but Omega actively encouraged and facilitated the partitioning of ginned cotton seed by variety for planting in subsequent years. Omega also intentionally altered its internal systems to facilitate the "catching" of cotton seed being ginned so that

farmers could collect it and save it for future plantings.  All of these actions were orchestrated by management level employees who were fully aware of what they were doing and that such actions were in breach of Omega's agreement with Monsanto.  Omega breached its agreement with Monsanto and induced patent infringement by actively advising its farmer customers how to save patented cotton seed and profit from this illegal activity in blatant disregard of its agreement with Monsanto.

14. Not only did Omega alter its internal equipment and process to facilitate the saving of seed, but it also provided growers with additional equipment (a "cement mixer") for use in the delinting of cotton seed—fully knowing the delinting had only one purpose—the unlawful re-planting of patented seed.

15. As well, Omega's actions facilitated and encouraged the use of various acids, including, on information and belief, sulphuric acid, often used in the de-linting process.  These acids can be hazardous to the ground water and environment and, unknowingly, to farm hands and migrant workers, who were required to work with and be exposed to them.

## FACTUAL ALLEGATIONS

16. Roundup® is a non-selective herbicide manufactured by Monsanto, which causes severe injury or destruction to plant varieties, including cotton varieties that do not contain the patented Roundup Ready® or the Roundup Ready® Flex technology.  Cotton displays a unique and identifiable symptomology after having been sprayed with Roundup® or other herbicides containing glyphosate, unless said cotton contains the patented Roundup Ready® or Roundup Ready® Flex technology.

17. Monsanto only licenses the use of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed technologies to farmers through authorized dealers at the retail marketing level with a limited use license commonly referred to as a "Technology Agreement."

18. Authorized licensees of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed are required to pay an established royalty (also known as a "technology fee") to Monsanto for each commercial unit of seed in addition to the price of the base germplasm.

19. Defendant entered into a "Monsanto Brand Seed Dealer Agreement" with Monsanto in August of 2005. That contract granted Defendant the authority to sell Monsanto seed brands. A true and accurate copy of Omega's Monsanto Brand Seed Dealer Agreement is attached hereto as Exhibit C.

20. On all bags containing Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed sold by Omega, Monsanto and other licensed seed companies placed the required statutory notice that the Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® technologies are patented. In particular, each bag of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed is marked with notice of at least United States Patent Nos. 6,949,696 and 7,064,249.

21. Monsanto does not authorize (and specifically prohibits under the language of the Technology Agreement) the planting of saved, second generation Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® cotton seed. The planting of saved, second generation Roundup Ready® Flex, Bollgard II®, or Roundup Ready® Flex with Bollgard II® cotton seed is a direct infringement of Monsanto's patent rights, including the '696 and '249 patents.

22. Monsanto does not authorize (and the Technology Agreement specifically prohibits) the transfer of saved, second generation Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® cotton seed. The transferring of saved, second generation Roundup Ready® Flex, Bollgard II®, or Roundup Ready® Flex with Bollgard II® cotton seed is a direct infringement of Monsanto's patent rights, including the '696 and '249 patents.

23. The saving and replanting of patented cotton seed is an involved process requiring active, not accidental, participation and direction by the farmer and the gin.

24. Cotton seed is contained within the cotton boll. The lint produced by the cotton plant is an extension of the seed coat and is physically attached to the cotton seed in the boll.

25. The harvested cotton crop is generally compressed into modules containing the harvested lint and seed from a given field or portion of a field. Those modules are assigned an identification number and eventually transported to the gin for processing.

26. The ginning process separates the lint from the cotton seed. Cotton lint is the primary commodity from the cotton crop, and the cotton seed is the secondary commodity of the harvest. The lint is used in, among other things, the manufacture of clothing.

27. The cotton seed is used in, among other things, the production of cotton seed oil. The entity ginning the cotton typically keeps the cotton seed as payment for separating the lint from the cotton seed.

28. For a farmer to acquire saved cotton seed from a prior harvest, he must have the assistance of a cotton gin. The cotton gin must plan and capture specific seed from ginned cotton to maintain varietal and trait purity. To do so, the cotton gin must segregate the seed ginned from specific modules from a farmer's specific cotton fields.

29. The ginning process does not remove all the lint from the cotton seed. The ginned seed containing a small amount of lint is commonly referred to as "fuzzy seed."

30. That fuzzy seed, while viable and able to produce a cotton plant, cannot be used with modern planting equipment unless the remaining lint is removed. To remove the residual lint from the fuzzy seed, the farmer must transfer, or have transferred, the seed to a delinter or delint the cotton seed himself.

31. The delinting process removes the residual lint from the cotton seed with acid. The delinted cotton seed may be treated with a fungicide and is typically bagged for planting.

32. For years, farmers identified for Omega specific modules containing specific cotton varieties with Monsanto Technologies, and Omega knowingly, intentionally, and willfully partitioned and/or sold to farmers fuzzy seed containing the Roundup Ready® Flex, Bollgard II®, Roundup Ready® Flex with Bollgard II® cotton seed, or combinations thereof (which was produced from Roundup Ready® Flex, Bollgard II®, and/or Roundup Ready® Flex with Bollgard II® cotton seed planted in prior years) without authorization from Monsanto.  Omega partitioned and sold the patented cotton with the intent and for the purpose of it being planted by its customers in violation of Monsanto's patent rights.

33. For years, Omega breached its contract with Monsanto by failing to report to Monsanto all planting of suspected pirated seed containing Monsanto Technologies or any such use of seed by farmers.  Omega further breached its contract with Monsanto and committed patent infringement by soliciting and making sales of pirated seed containing patented Monsanto Technologies, including sales to unlicensed farmers.

34. Omega also encouraged and assisted in the seed saving activity, by, among other things, lending delinting equipment to some farmers.

35. The seed saving activity in the Tift County area would not have occurred without Omega's promotion and inducement.

36. More specifically, Omega, through its employees and/or managers, caught specific varieties of seed that it knew were in specific modules from harvested cotton containing Monsanto patented biotechnologies with the intent and for the purpose of selling the seed for delinting and planting.

37. The seed that Omega caught, and which was later delinted and planted, contained Monsanto's Roundup Ready® Flex, Bollgard II®, and/or Roundup Ready® Flex with Bollgard II® traits.

38. For years, Omega has sold fuzzy seed to area farmers for delinting and planting, including farmers for whom it had not previously ginned cotton.

## COUNT I

### BREACH OF CONTRACT

39. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

40. On August 12, 2005, Omega entered into a contract with Monsanto titled Monsanto Brand Seed Dealer Agreement.

41. The contract requires Omega to notify Monsanto of known or suspected use of pirated seed containing Monsanto Technologies.

42. Omega not only failed to notify Monsanto, but supplied farmers with the pirated seed.

43. The Monsanto Brand Seed Dealer Agreement granted Omega a license to sell seed containing one or more of Monsanto's patented technologies to growers who signed a Monsanto Technology/Stewardship Agreement, and Agreement was accepted by Monsanto.

44. The Monsanto Brand Seed Dealer Agreement requires Omega to cooperate in Monsanto's enforcement of its contract and patent rights by, among other things, providing copies of relevant documents.

45. Omega sold seed containing one or more of Monsanto's patented technologies to unlicensed growers.

46. Omega failed to provide copies of relevant documents when requested by Monsanto.

47. Omega, through its employees and agents, coordinated/brokered sales and use of second generation cotton seed containing Monsanto's patented biotechnologies for planting.

48. Omega breached its contract with Monsanto and caused Monsanto monetary damage.

49. Monsanto is entitled to specific performance of its contract with Omega and should be provided the names and specifics of all businesses and individuals to which Omega provided fuzzy cotton seed.

50. Monsanto is entitled to compensation for lost varietal payments and lost royalties caused by Omega's breach.

## COUNT II

### INDUCEMENT TO INFRINGE-Patent No. 6,949,696

51. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

52. On September 27, 2005, United States Patent Number 6,949,696 was duly and legally issued to Monsanto. The '696 patent is for an invention of Chimeric Figwort Mosaic Virus-Elongation Factor 1 α Promoters and Methods of Using Them. This invention is in the fields of genetic engineering and plant biology.

53. Monsanto is the owner by assignment of all rights, title and interest in and to the '696 Patent.

54. At all relevant times, Omega was aware of the fact that the Roundup Ready® Flex trait was covered by U.S. patents, including the '696 patent.

55. Omega actively induced its customers' infringement of the '696 patent by providing and promoting a system through which growers could obtain seed that had been partitioned during the ginning process to preserve the consistency of the biotechnology the seed contained, which included the patented Roundup Ready® Flex trait, and is therefore liable for patent infringement. Omega will continue this unlawful illegal activity unless enjoined by this Court.

56. Omega's inducement was conducted with full knowledge that the seed it processed and/or transferred contained Monsanto's patented technologies and with the intent that it be planted in violation of Monsanto's patent rights.

57. Omega's actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

58. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

59. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer.  Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of Omega's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

60. Omega's infringing activity brings this cause within the ambit of the exceptional case contemplated by 35 U.S.C. § 285.  Thus, Monsanto is entitled to an award of its reasonable attorneys' fees and costs.

## COUNT III

### PATENT INFRINGEMENT – Patent No. 6,949,696

61. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

62. On September 27, 2005, United States Patent Number 6,949,696 was duly and legally issued to Monsanto.  The '696 patent is for an invention of Chimeric Figwort Mosaic Virus-Elongation Factor 1 α Promoters and Methods of Using Them.  This invention is in the fields of genetic engineering and plant biology.

63. Monsanto is the owner by assignment of all rights, title and interest in and to the '696 Patent.

64. Omega infringed the '696 patent by making, using, transferring, offering for sale or selling cotton seed having the Roundup Ready® Flex trait embodying or using the patented

invention without authorization from Monsanto.  Omega will continue this unlawful illegal activity unless enjoined by this Court.

65. Omega's inducement was conducted with full knowledge that the seed it processed and/or transferred contained Monsanto's patented technologies and with the intent that it be planted in violation of Monsanto's patent rights.

66. Omega's actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

67. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

68. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer.  Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of Omega's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

69. Omega's infringing activity brings this cause within the ambit of the exceptional case contemplated by 35 U.S.C. § 285.  Thus, Monsanto is entitled to award of its reasonable attorneys' fees and costs.

## COUNT IV

### INDUCEMENT TO INFRINGE -Patent No. 7,064,249

70. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

71. On June 20, 2006, the '249 Patent was duly and legally issued to Monsanto for an invention in Plants Transformed to Express Cry2A α endotoxins.

72. Monsanto is the owner by assignment of all rights, title and interest in and to the '249 Patent.

73. At all relevant times, Omega was aware of the fact that the Bollgard II® trait was covered by U.S. patents, including the '249 patent.

74. Omega actively induced its customers' infringement of the '249 patent by providing and promoting a system through which growers could obtain seed that had been partitioned during the ginning process to preserve the consistency of the biotechnology the seed contained, which included the patented Bollgard II® trait, and is therefore liable for patent infringement. Omega will continue this unlawful illegal activity unless enjoined by this Court.

75. Omega's inducement was conducted with full knowledge that the seed it processed and/or transferred contained Monsanto's patented technologies and with the intent that it be planted in violation of Monsanto's patent rights.

76. Omega's actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

77. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

78. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to Omega.  Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of Omega's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

79. Omega's infringing activity brings this cause within the ambit of the exceptional case contemplated by 35 U.S.C. § 285.  Thus, Monsanto is entitled to award of its reasonable attorneys' fees and costs.

## COUNT V

### PATENT INFRINGEMENT -Patent No. 7,064,249

80. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

81. On June 20, 2006, the '249 Patent was duly and legally issued to Monsanto for an invention in Plants Transformed to Express Cry2A α endotoxins.

82. Monsanto is the owner by assignment of all rights, title and interest in and to the '249 Patent.

83. Omega infringed the '249 Patent by making, using, transferring, offering for sale or selling cotton seed having the Bollgard II® trait embodying the patented invention without authorization from Monsanto, and Omega will continue this unlawful activity unless enjoined by this Court.

84. Omega's inducement was conducted with full knowledge that the seed it processed and/or transferred contained Monsanto's patented technologies and with the intent that it be planted in violation of Monsanto's patent rights.

85. Omega's actions have damaged Monsanto and will continue to injure Monsanto, unless and until such infringement is enjoined by this Court.

86. Pursuant to 35 U.S.C. § 283, Monsanto is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

87. Pursuant to 35 U.S.C. § 284, Monsanto is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer.  Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of Omega's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

88. Omega's infringing activity brings this cause within the ambit of the exceptional case contemplated by 35 U.S.C. § 285.  Thus, Monsanto is entitled to award of its reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Monsanto prays that process and due form of law issue to the Defendant requiring it to appear and answer the allegations of this complaint, and that after due proceedings are had, there be judgment in favor of Plaintiffs and against the Defendant, providing the following remedies to Plaintiffs:

1. Entry of judgment that the Defendant has infringed the '696 and '249 patents, and that such infringement has been unlawful, willful and deliberate;

2. Entry of judgment that the Defendant induced others to infringe the '696 and '249 patents, and that such inducement to infringe has been unlawful, knowing, intentional, willful and deliberate;

3. Entry of judgment for damages, together with interest and costs, to compensate Monsanto for the Defendant's patent infringement and inducement to infringe;

4. A finding that this case is exceptional under 35 U.S.C. § 285, thereby trebling of damages awarded for the infringement of patents together with reasonable attorneys' fees;

5. Entry of judgment for damages, together with interest and costs, to compensate Monsanto for the Defendant's conversion of Plaintiffs' property rights;

6. Entry of a punitive damages award against the Defendant for its willful and malicious conversion of Monsanto's property;

7. Entry of judgment for damages, together with interest and costs to compensate Monsanto for Defendant's unjust enrichment and the profits obtained that in equity and good conscience belong to Monsanto;

8. Entry of a permanent injunction against the Defendant to prevent it from making, using, saving, cleaning, delinting, planting, selling, offering to sell or otherwise transferring, any of Monsanto's proprietary technologies, without express written permission from Monsanto;

9. Entry of judgment for costs, expenses, and reasonable attorneys' fees incurred by Monsanto; and

10. Such other relief as the Court may deem appropriate.

Respectfully submitted,

THOMPSON COBURN LLP

By /s/ Daniel C. Cox
    Daniel C. Cox, 38902MO
    Jeffrey A. Masson, 60244MO
    Matthew S. Bober, 59825MO
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000
    dcox@thompsoncoburn.com
    jmasson@thompsoncoburn.com
    mbober@thompsoncoburn.com

*Attorneys for Plaintiffs Monsanto Company and Monsanto Technology, LLC*