**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MONSANTO COMPANY and <br> MONSANTO TECHNOLOGY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> OMEGA FARM SUPPLY, INC., d/b/a <br> OMEGA FARM SUPPLY & GIN CO., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 4:14-CV-870 JAR <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Omega Farm Supply, Inc.'s Motion to Dismiss Counts I, II and IV of Plaintiff Monsanto Company's Complaint and Motion to Transfer Remaining Counts Due to Improper Venue. (Doc. No. 9) The motion is fully briefed and ready for disposition.

**I.     Background**

Plaintiff Monsanto brings this action for breach of contract and patent infringement against Defendant Omega Farm Supply, Inc. ("Omega"), a Georgia corporation in the business of distributing farm input supplies, including seed, and the ginning, warehousing and marketing of cotton. (Complaint ("Compl."), Doc. No. 1 at ¶ 10) Monsanto is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and agricultural products. After the investment of substantial time, expense, and expertise, Monsanto developed plant biotechnology that results in tolerance to glyphosate-based herbicides (such as Roundup WeatherMAX® and Touchdown®) as well as certain insect species that are cotton plant pests. (Id. at ¶ 2) Cotton seed containing these biotechnologies is marketed by Monsanto

under multiple trade names, including Roundup Ready® and Roundup Ready® Flex cotton, Bollgard® and Bollgard II® cotton, and Roundup Ready® Flex with Bollgard II® cotton. (Id. at ¶ 3) The biotechnology is protected by multiple United States patents, including United States Patent Numbers 6,949,696 ("the '696 patent") issued on September 27, 2005 and 7,064,249 ("the '249 patent") issued on June 20, 2006. (Id. at ¶¶ 4, 5; Doc. Nos. 1-1, -2)

Monsanto only licenses the use of Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® seed technologies to farmers through authorized dealers at the retail marketing level with a limited use license commonly referred to as a "Technology Agreement." (Compl. at ¶ 17) Authorized licensees must pay a "technology fee" to Monsanto for each commercial unit of seed in addition to the price of the base germplasm. (Id. at ¶ 18) The planting and transferring of saved, second generation Roundup Ready® Flex, Bollgard II®, and Roundup Ready® Flex with Bollgard II® is prohibited under the Technology Agreement. (Id. at ¶¶ 21, 22)

In August 2005, Omega entered into a Monsanto Brand Seed Dealer Agreement ("MBSD," Doc. No. 1-3) with Monsanto which established Omega as a designated dealer for certain branded seed. (Id. at ¶ 19) The MBSD requires Omega to notify Monsanto of known or suspected use of pirated seed containing Monsanto technologies and cooperate in Monsanto's enforcement of its contract and patent rights. (Compl. at ¶¶ 41, 44; MBSD at ¶ 8) Pursuant to the MBSD, the parties consented to sole and exclusive jurisdiction and venue in this Court "for all claims and disputes arising out of or connected in any way with [the] Agreement or the seed referenced [therein]." (MBSD at ¶ 20)

Monsanto alleges that "for years," Omega breached its contract with Monsanto by failing to report the unauthorized use of Monsanto seed technologies. Monsanto further alleges that

Omega breached its contract with Monsanto and committed patent infringement by soliciting and making sales of pirated seed containing patented Monsanto technologies, including sales to unlicensed farmers. (Id. at ¶ 33) According to Monsanto, Omega also encouraged and assisted in the seed saving activity. (Id. at ¶ 34)

Omega moves to dismiss Monsanto's breach of contract claim (Count I) as well as its claims for inducement to infringe (Counts II and IV). In the event the breach of contract claim is dismissed, Omega moves for transfer of the remaining counts to the Middle District of Georgia pursuant to 28 U.S.C. § 1404.

**II.     Discussion**

**A. Motion to dismiss**

**Breach of contract**

In support of its motion, Omega argues that Monsanto's contract claim should be dismissed because Monsanto has failed to allege any activity involving the four brands of seed covered by the MBSD, namely, DEKALB, Asgrow, Nexgen, and Stoneville.[1] Omega further argues the MBSD is inapplicable because the patents alleged to have been infringed were not in existence at the time it was entered into on August 12, 2005; the '696 patent issued on September 27, 2005 and the '249 patent issued on June 20, 2006. (Id. at 4) Thus, venue is inappropriate in the Eastern District of Missouri. (Id.)

Monsanto responds that under the MBSD, Omega had a contractual obligation, separate and apart from its obligations with respect to the sale of Monsanto branded seed, to report suspected seed piracy and cooperate and assist Monsanto in enforcing its contractual and patent rights, irrespective of any brand or variety of seed. (Doc. No. 11 at 4) For this reason, Monsanto

---

[1] Omega believes Monsanto's allegations relate to Delta Pine brand cotton seed, as well as other seed sold under brands not owned by Monsanto. (Doc. No. 9 at 2-3)

maintains that Omega's argument about the date of the patents at issue in relation to the date of the MBSD is also unavailing. (Id. at 4 n. 2) Monsanto takes the position that the MBSD applies, venue in this District is proper under the MBSD's forum selection clause and Omega's motion to transfer should be denied. (Id. at 5 n.6)

In reply, Omega argues that Monsanto is trying to expand the scope of the reporting requirement in the MBSD to cover later-issued patents that apply to other types of seed. The reporting requirement states that Omega "shall report to Monsanto all planting of suspected pirated seed containing Monsanto Technologies or any use of such seed by a grower." (MBSD at ¶ 8) Relying on paragraph 7 of the MBSD[2], Omega contends that "Monsanto Technologies" only covers the patented technologies found in DEKALB, Asgrow, Nexgen, and Stoneville seed as of the effective date of the MBSD, i.e., August 12, 2005, and should not be read to cover patents and/or technologies that did not exist as of that time. Because the two patents involved in this action, '696 and '249, were issued on September 27, 2005 and June 20, 2006, respectively, they are not covered "Monsanto Technologies," and the reporting requirement of paragraph 8 of the MBSD does not apply to them. (Doc. No. 12 at 3-4)

It is a well-established rule of contract interpretation that a contract must be interpreted as a whole and that the intention of the parties is to be ascertained from the entire instrument. Individual words and phrases must be considered in connection with the rest of the contract. See

---

[2] Paragraph 7 provides in pertinent part as follows:

Monsanto grants a limited, non-exclusive, non-royalty bearing license to Dealer [Omega] to transfer and/or sell **DEKALB, Asgrow, Nexgen and/or Stoneville seed containing one or more of Monsanto's patented technologies ("Monsanto Technologies")** to other Dekalb, Asgrow, Nexgen and/or Stoneville authorized dealers, other entities authorized by this Agreement, and to growers that have obtained a license to grow seed containing Monsanto Technologies by having signed a Monsanto Technology/Stewardship Agreement that has been accepted by Monsanto and is in good standing as listed at www.farmsource.com.

(MBSD at ¶ 7) (Emphasis added).

Monarch Fire Protection District of St. Louis County, Missouri v. Freedom Consulting & Auditing Services, Inc., 644 F.3d 633, 638 (8th Cir. 2011); Adbar Co., L.C. v. PCAA Missouri, LLC, 2008 WL 68858 at *4 (E.D.Mo. Jan. 4, 2008). See also, Shaw Hofstra & Associates v. Ladco Development, Inc., 673 F.3d 819, 826 (8th Cir. 2012).

After careful review of the MBSD, and following the well-established principles of contract interpretation, the Court finds that Omega's contractual obligation to report seed piracy or suspected seed piracy to Monsanto, and to cooperate and assist Monsanto in enforcing its contract and patent rights, was intended to apply separate and apart from its obligations with respect to the sale of Monsanto branded seed. This is clear for several reasons.

First, as noted, the MBSD established Omega as a designated dealer in DEKALB, Asgrow, Nexgen and/or Stoneville brand seed. (MBSD at ¶ 2) By its clear terms, the MBSD contemplated that additional brands of seed would be covered: "Monsanto will designate [Omega] as an authorized dealer in DEKALB brand, Asgrow brand, Nexgen brand, and/or Stoneville brand seed *and by species and/or by specialty seed Monsanto may change the Dealer's designation*." (MBSD at ¶ 2) (Emphasis added).

Next, the word "seed" is capitalized throughout the Agreement when referring to the designated seed brands and Omega's related obligations. See e.g., MBSD at ¶ 3 (payment terms) ("Dealer will pay for all Seed according to the payment terms specified"); MBSD at ¶ 5 (security interest) ("Dealer grants Monsanto a security interest in the Seed pursuant to this Agreement"); MBSD at ¶ 6 (risk of loss) ("Risk of loss of Seed will pass from Monsanto to Dealer upon transfer of Seed by Monsanto … to a carrier for delivery to Dealer or upon delivery to Dealer, whichever occurs first"); MBSD at ¶ 8 (transaction reporting guidelines) ("Dealer will maintain complete and accurate records of all transactions related to Seed"); and MBSD at ¶ 14 (remedies)

("The exclusive remedy of Dealer and the limit of the liability of Monsanto for any and all losses … resulting from the use or handling of the Seed … is the replacement of the quantity of Seed at issue").

In contrast, the word "seed" is not capitalized when used in connection with obligations that are not seed specific, such as Monsanto's warranties (MBSD at ¶ 13) ("Monsanto warrants that its seed conform to the label description on the bag and bag tags within reasonable tolerances") and Omega's compliance with all local, state and federal laws and Monsanto rules and regulations for storing seed. (MBSD at ¶ 17)

Taken together, these provisions of the Agreement confirm that Omega's obligation to "report to Monsanto all planting of suspected pirated seed containing Monsanto Technologies or any use of such seed by a grower" was not intended to be tied to any particular brand of seed. (MBSD at ¶ 8) Likewise, the MBSD required Omega to cooperate and assist Monsanto in enforcing its contract and patent rights without regard to any particular brand of seed: "Dealer will cooperate in Monsanto's enforcement efforts of Monsanto's contract rights, patent rights, and Plant Variety Protection rights, including without limitation, providing copies of relevant documents . . . ." (MBSD at ¶ 11) For this reason, the date of the patents at issue in relation to the date of the MBSD has no bearing.

To state a claim for breach of contract, a plaintiff need only plead facts sufficient to demonstrate the existence of a valid contract and its breach. St. Louis Housing Authority ex rel. Jamison Elec., LLC v. Hankins Const. Co., 2013 WL 3802523, at *1 (E.D.Mo. July 22, 2013) (citing Amburgy v. Express Scripts, Inc., 671 F.Supp.2d 1046, 1055–56 (E.D.Mo.2009)). The Court finds Monsanto has asserted facts that plausibly state a claim for breach of contract against Omega, specifically: (1) the existence of a valid and enforceable contract (Compl. at ¶ 40); (2)

the contractual obligations at issue, i.e., notifying Monsanto of suspected seed piracy and cooperating with Monsanto in enforcing its contract and patent rights (id. at ¶¶ 41, 44); (3) Omega's breach of those obligations (id. at ¶¶ 42, 46); and (4) resulting damages to Monsanto (id. at ¶ 48). (Doc. No. 11 at 5) The issue for the Court's determination on a motion to dismiss is whether Monsanto's complaint gives Omega fair notice of the breach of contract claim and the grounds on which it is based. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). The Court finds that it does. Thus, Omega's motion to dismiss will be denied as to Count I.

**Patent inducement**

35 U.S.C. § 271(b) provides that, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To survive a motion to dismiss, a complaint alleging induced infringement must contain facts plausibly showing that the defendant "specifically intended [another] to infringe the [plaintiff's] patent and knew that [the other's] acts constituted infringement." TSI (USA) Inc. v. Creative Compounds, LLC, 2014 WL 5419579, at *3 (E.D.Mo. Oct. 22, 2014) (quoting In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed.Cir.2012)); Manville v. Paramount Systems, Inc., 917 F.2d 544, 553 (Fed.Cir. 1993). See also Global–Tech Appliances, Inc. v. SEB S.A., 131 S.Ct. 2060, 2068 (2011) (holding that § 271(b) requires both "knowledge of the existence of the patent that is infringed" and "knowledge that the induced acts constitute patent infringement.") Id. at 2068. In addition, "inducement liability may arise 'if, but only if, [there is] direct infringement.' " Limelight Networks, Inc. v. Akamai Technologies, Inc., 134 S.Ct. 2111, 2117 (2014) (quoting Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341 (1961)).

Omega argues Monsanto's complaint fails to plead sufficient facts establishing intent. First, Monsanto's claims of patent infringement are based on the sale of seeds identified as Roundup Ready® Flex and Bollgard II® cotton, yet Monsanto fails to allege that Omega could know the seed origination of each type of cotton brought to it for processing. (Doc. No. 9 at 10) Omega states that cotton brought to it by a farmer is not identified by seed type or marked with patent numbers. In fact, the only place that Monsanto alleges such seeds would be marked is when the seeds are in the bags in which they are originally sold (see Compl. at ¶ 20), which are long gone by the time the cotton is brought to the gin. (Doc. No. 9 at 11) Second, the patents at issue were granted after the parties entered into the MBSD and Monsanto does not allege the MBSD was later modified to put Omega on notice of the patents. (Id.) Finally, Monsanto does not allege that Omega could identify cotton received at the gin as containing technology covered by the patents at issue. (Id. at 11-12)

Monsanto responds that it has plausibly alleged that Omega had knowledge of the patents at issue, intended its customers infringe the patents, and knew that its customers' acts constituted infringement. (Doc. No. 11 at 7-9) In particular, Monsanto alleged that Omega entered into a "Monsanto Brand Seed Dealer Agreement" with Monsanto authorizing it to sell Monsanto seed brands and, as a result, was fully aware of Monsanto's patents and the prohibition against collecting second generation seed. (Id. at ¶¶ 13, 19) In addition, Monsanto alleged that bags containing Roundup Ready® Flex, Bollgard II®, and Roundup Ready®, Flex with Bollgard II® seed, which Omega sells, are marked with the patents asserted in this action. (Id. at ¶ 20) Monsanto also alleged that "[f]or years, farmers identified for Omega specific modules containing specific cotton varieties with Monsanto Technologies …" (Compl. at ¶ 32) Given Omega's background in the cotton industry, its past relationship with Monsanto, and the fact that

it sells seed marked with the asserted patents, Monsanto maintains it is "more than plausible" that Omega knew of the asserted patents. (Doc. No. 11 at 7)

In addition, Monsanto alleged that Omega "advis[ed] its farmer customers how to save patented cotton seed and profit from this illegal activity …" (Compl. at ¶ 13), and assisted farmers "in "captur[ing] specific seed from ginned cotton to maintain varietal and trait purity" by "segregate[ing] the seed ginned from specific modules from a farmer's specific cotton fields." (Id. at ¶ 28) Monsanto alleges that to accomplish this, Omega "intentionally altered its internal systems to facilitate such 'catching' of cotton seed being ginned so farmers could collect it and save it for future plantings." (Id. at ¶ 13) Further, because this captured cotton seed, referred to as "fuzzy seed," "cannot be used with modern planting equipment" without first being "delinted," Monsanto alleges that Omega assisted farmers to infringe Monsanto's patents by "lending delinting equipment to some farmers, including a "cement mixer," and advising them on which types of "acids" to use in the "delinting" process. (Id. at ¶¶ 14, 15, 29, 30, 34, 36)

In reply, Omega takes issue with Monsanto's contention that it could know the origin of all cotton brought to its gin for processing based on the allegations presented, particularly based on identification numbers on the modules of harvested cotton provided by its farmer customers. (Doc. No. 12 at 6-7) Omega's arguments go to the weight of the evidence rather than the sufficiency of Monsanto's allegations. At the motion to dismiss stage, the Court does not undertake a full evaluation of "probability," but simply asks for "enough fact[s] to raise a reasonable expectation that discovery will reveal" that a defendant has acted unlawfully. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Fact patterns found to show specific intent to induce infringement include control by the accused over the infringing activities, provision of materials by the accused to facilitate the

infringing activities, provision of instructions directing use of the material in an infringing manner, and design of the infringing product or process by the accused. See e.g., Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings, 370 F.3d 1354 (Fed. Cir. 2004); Minnesota Min. & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1305 (Fed. Cir. 2002); Palmetto Pharmaceuticals LLC v. AstraZeneca Pharmaceuticals LP, 2012 WL 484907, at *8 (D.S.C. Jan. 4, 2012). See also DSU Medical Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1305 (Fed.Cir. 2006) ("Evidence of 'active steps … taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe … ") (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.SW. 913, 936 (2005)); Potter Voice Techs., LLC v. Apple Inc., 24 F.Supp.3d 882, 888 (N.D. Cal. 2014) (plaintiff stated a claim for induced infringement by identifying both the direct infringer (customers using the Apple iPhone 4S and other similar products) and the way in which defendant encouraged others to infringe (by instructing and encouraging them on its public website to use infringing features).

Accepting Monsanto's factual allegations as true and granting all reasonable inferences from the pleadings in its favor, the Court finds Monsanto has sufficiently alleged that Omega possessed specific intent to encourage its customers to infringe the asserted patents and knew that the customer's acts constituted infringement. Accordingly, Omega's motion to dismiss will, therefore, be denied as to Counts II and IV.

**B. Motion to transfer**

In determining whether a cause of action should be transferred pursuant to 28 U.S.C. § 1404(a), the Court must consider a variety of factors, such as the convenience of the parties and witnesses, availability of judicial process to compel the attendance of unwilling witnesses, the

governing law, the relative ease of access to the sources of proof, and the interests of justice. Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997). The most significant factor in a court's decision whether to transfer a case is, however, a forum selection clause. See Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Pursuant to the MBSD, the parties consented to sole and exclusive jurisdiction and venue in this Court "for all claims and disputes arising out of or connected in any way with [the] Agreement or the seed referenced [therein]."[3] (MBSD at ¶ 20)

Forum selection clauses are presumptively valid and enforceable "unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citing The Bremen v. Zapata-Off-Shore Co., 407 U.S. 1, 15 (1971)). See also Servewell Plumbing, LLC v. Federal Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006). Omega does not suggest that the forum selection clause in the MBSD was the product of fraud or overreaching; instead, it contends the MBSD is inapplicable in this case and that venue is appropriate in the Middle District of Georgia. (Doc. No. 9 at 5-9)

As discussed above, the MBSD does apply. Therefore, venue in this District is proper under the MBSD's forum selection clause. Because the parties agreed to a valid forum selection clause, the Court's analysis of Omega's motion to transfer is altered. See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas, 134 S.Ct. 568, 581 (2013). The Court may not consider the parties' private interests, such as whether the forum is convenient for the parties or their witnesses. Id. The Court may, however, assess public interest considerations in determining whether transfer is appropriate under either § 1404(a) or forum non conveniens. Id. at 582.

---

[3] A virtually identical forum selection clause has been enforced by this Court. See Monsanto Co. v. Dawson, 2000 WL 33952259, at *3 (E.D.Mo. Aug. 18, 2000).

Omega argues the Middle District of Georgia has "localized interest" with regard to both parties in resolving this dispute since Omega is a Georgia corporation and Monsanto has two facilities there. (Doc. No. 9 at 8) Further, Monsanto charges different amounts for the technology at issue in different states, making this case particularly suited to be tried in the venue where the seed at issue is sold and planted. (Id.) The Court has considered Omega's arguments but finds they do not outweigh the public interest in enforcing the parties' bargain as written. See Tsai v. Karlik, 2014 WL 3687201, at *4 (E.D.Mo. July 24, 2014). Omega's motion to transfer the case will be denied.

**III.    Conclusion**

For all of these reasons, Monsanto's complaint contains sufficient facts to permit the Court to draw the reasonable inference that Omega is liable for breach of contract and/or induced infringement. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In addition, Omega has not met its burden of proof that public interest considerations warrant transfer of this action from this District under § 1404(a).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Omega Farm Supply, Inc.'s Motion to Dismiss Counts I, II and IV of Plaintiff Monsanto Company's Complaint and Motion to Transfer Remaining Counts Due to Improper Venue [9] is **DENIED**.

**IT IS FURTHER ORDERED** that a Rule 16 conference will be set by separate order.

Dated this 12th day of February, 2015.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**