UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MONSANTO COMPANY and | ) | |
| MONSANTO TECHNOLOGY, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case Number:  4:14-cv-00870-JAR |
| | ) | |
| OMEGA FARM SUPPLY, INC., d/b/a | ) | |
| OMEGA FARM SUPPLY & GIN | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OMEGA FARM SUPPLY, INC.'S RESPONSE TO MONSANTO'S MOTION TO COMPEL

Defendant Omega Farm Supply, Inc. ("Omega") hereby responds to Plaintiff Monsanto Company's ("Monsanto") Motion to Compel as set forth below.

## Background

Monsanto is requesting the Court to compel the production of certain documents and responses to certain interrogatories.  In many cases, Omega has already fully responded. Monsanto is well aware that Omega does not maintain detailed documentation for all aspects of its business.  In fact, Monsanto's counsel (at least Jeffrey A. Mason) has been allowed detailed inspections of Omega's facilities on multiple dates prior to the institution of this action. Monsanto's counsel was accompanied by a number of private "agricultural" investigators (including at least Glenn Pace and Rob Pace) on their visits.  In the instance of many of the discovery requests discussed below, Omega finds it unlikely that Monsanto does not have a detailed understanding of Omega's cotton gin and the process by which seeds and delinted cotton are separated and captured based on their inspections of Omega's facilities.

Furthermore, as indicated during telephonic discussions with Monsanto's counsel, Omega's sole employee responsible for record keeping has been out of work with a broken hip for the last several weeks. She has just recently returned to work and will be assisting Omega in locating any additional relevant documents responsive to Monsanto's pending discovery requests subject to the discussion below. Where indicated, Omega is making every effort to locate responsive documents to the extent that they exist.

**Interrogatory No. 1 and Request for Production No. 1**

Monsanto has requested Omega to "describe in detail each grower and entity for whom you caught seed between 2009 and the present." Omega properly replied to this request with a list of growers and entities that Omega was aware of as parties for whom Omega caught seed during the defined time period. Omega is in the process of searching its archived records to produce additional invoice information for the identified growers. The fact that Monsanto was already able to recognize the growers identified by Omega further evidences that Monsanto likely already has obtained this information based on its visits to Omega. However, Omega is currently examining its archived records and will produce responsive invoice documents to the extent that they are under Omega's custody or control. Omega will identify any additionally located growers if any such growers are evidenced through additionally located documents as they exist..

**Interrogatory No. 2**

Monsanto has requested Omega to "identify all persons to whom it sold or transferred cotton seed from another grower's harvest." Omega properly replied that it is not aware of any such growers. Omega has no knowledge or control of documents indicating the origin of cotton brought to the gin. Omega has no way to determine if a grower is bringing his/her own grown

cotton or cotton from another grower.  Growers simply bring cotton to the gin and request ginning.  Omega gins the cotton and provides the delinted cotton (with or without the separated seeds) back to the grower that provided the cotton.  The actions of the grower are unknown to Omega and clearly not under Omega's control.

Monsanto's Motion to Compel (pages 2 and 3) allege that certain invoices serve as evidence that someone received seed from another grower's harvest.  That is simply not the case.  The documents referred to by Monsanto are simply indicative of credit differences between the gin and a customer's account.  It in no way can evidence whose harvest particular lots of cotton and its resultant may have been provided from.

That said, Omega is in the process of searching its archived records to produce additional invoice information for the identified growers.  Unfortunately, the particular documents cited to by Monsanto were created by a long-gone assistant at Omega on a Quickbooks program that has not been in use since her departure about 3 years ago.  To the extent that Omega can locate invoice information similar to the documents that Monsanto received from other growers, Omega will produce said documents.  However, Omega maintains that said documents do not appear to be responsive to Monsanto's Interrogatory No. 2 as said documents do not appear to provide the information that Monsanto alleges.

### Request for Production No. 2 and Interrogatory No. 6

Monsanto has requested Omega to produce documents "relating to the mechanical changes it made to its gin."  Again, Monsanto's counsel has inspected Omega's gin on a number of occasions, and is quite aware of the mechanical structure of the gin. Furthermore, Monsanto has had multiple opportunities to take photographic evidence of the gin's construction.

Omega properly responded to Monsanto's Interrogatory No. 6 with information identifying the only change made since the initial construction of the gin.  A section of pipe measuring about 20 feet was attached to the seed output pipe ending in an elbow joint to allow for output of the seed.  Omega will gladly supplement its response with pictures of the pipe section that Monsanto has inspected multiple times.  Other than that there have been no additional physical or mechanical changes made to the gin.

**Interrogatory Nos. 3, 4, 5, and 7**

Monsanto makes a blanket statement that "Omega has refused to answer or answer in full Interrogatory Nos. 3, 4, 5, and 7."  Omega respectfully disagrees.  Interrogatory No. 3 requests identification of Omega individuals involved in ginning cotton and separating seeds for a grower. Omega responded with identification of the individuals that are responsible for the ginning process and their respective duties.

Interrogatory No. 4 requests a description of the process by which a farmer may obtain fuzzy seed from Omega and production of associated invoices.  Omega properly responded by identifying the people at Omega to which a grower may bring cotton to obtain delinted cotton and fuzzy seed.  From its inspections, Monsanto is well aware of the actual procedure of separating the seed from the cotton.  Omega further responds that its archived documents are being searched and that responsive invoice documents will be produced to the extent that they exist.

Interrogatory No. 5 requests identification of persons that took possession of Omega's cement mixers.  Omega truthfully responded that it does not keep records of who uses the cement mixers.  Omega notes that two of the three cement mixers that have been on Omega's property were provided by Monsanto.  The cement mixers were available for use by any

customers and many times would be taken off the property for long periods of time wherein Omega was not in control of the cement mixers.  Again, Omega reiterates that no records have been maintained as to the usage of the cement mixers.

Interrogatory No. 7 is duplicative of Interrogatory No. 4 and again requests a description of the process by which a farmer may obtain fuzzy seed from Omega.  Omega properly responded by identifying the people at Omega to which a grower may bring cotton to obtain delinted cotton and fuzzy seed.  From its inspections, Monsanto is well aware of the actual procedure of separating the seed from the cotton.  However, Omega is willing to supplement its responses with additional information of how a cotton gin works if Monsanto is unclear from its inspections how seed is separated during the delinting process.

**<u>Request for Production Nos. 3, 4, 5, 6, 7, 8, and 9</u>**

Monsanto makes a blanket statement requesting "Omega be compelled to produce documents responsive to [the requests] or produce a privilege log for such documents." Omega has properly responded to these requests subject to the comments below.  Request for Production No. 3 requests "all agreements between [Omega] and Michael Brooks."  Omega properly responded that no such relevant documents exist under Omega's custody or control.  Similarly, Request for Production No. 4 requests "Michael Brooks' employee files/records."  Omega properly responded that no such relevant documents exist under Omega's custody or control. Simply put, there are no such agreements or employee files.

Request for Production No. 5 requests documents concerning Michael Brooks' compensation and how that compensation was determined.  Again, Omega properly responded that no such relevant documents exist under Omega's custody or control.  Furthermore, Michael Brooks' compensation is hardly relevant to the present allegations made by Monsanto.  Subject

to the foregoing, Omega will supplement its response to provide information concerning Michael Brooks' compensation once a Protective Order is put in place.

Request for Production Nos. 6 and 7 request agreements and other documents concerning Buddy Brogdon, a previous co-owner of Omega.  While Omega has to date been unable to locate any such agreements, Omega fails to see how such agreements are relevant to the present allegations.  Furthermore, the request for documents relating to any disputes with Buddy Brogdon is wholly unrelated to the present allegations.

Request for Production No. 8 requests agreements between Omega and Chickasha of Georgia, LLC.  Omega was unable to locate any such agreements under its custody or control. However, in the interest of disclosure, Omega is in the process of obtaining such agreements from Chickasha, and will produce any documents once a Protective Order is put in place.

**Conclusion**

Where indicated, Omega is making every effort to locate responsive documents to the extent that they exist.  Omega will supplement its responses to Monsanto's discovery requests including the production of documents as indicated above.

**Respectfully submitted,**
By /s/ Michael I. Krause
Michael I. Krause
Jeffrey D. Blake
Merchant and Gould
191 Peachtree Street NE
Suite 4300
Atlanta, GA 30303
404-954-5100
mkrause@merchantgould.com
jblake@merchantgould.com

J.L. King, II

- 6 -

Hudson King
615 North Virginia Ave.
P.O. Box 2520
Tifton, GA 31793
229-396-5845
jlking@hudsonkinglaw.com

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of September, 2015, a true and accurate copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

> Daniel C. Cox, Mo. E.D. Bar # 38902MO
> Jeffrey A. Mason, Mo. E.D. Bar # 60244MO
> Matthew S. Bober, Mo. E.D. Bar # 59825MO
> One US Bank Plaza
> St. Louis, Missouri  63101
> 314-552-6000
> FAX 314-552-7000
> <u>dcox@thompsoncoburn.com</u>
> <u>jmasson@thompsoncoburn.com</u>
> <u>mbober@thompsoncoburn.com</u>
>
> Attorneys for Plaintiffs

/s/ Michael I. Krause